568 So.2d 1091 (1990)
Mr. and Mrs. Larry JONES
v.
LIBERTY MUTUAL INSURANCE COMPANY.
No. 90-CA-205.
Court of Appeal of Louisiana, Fifth Circuit.
September 13, 1990.
On Rehearing October 17, 1990.
Writ Denied January 4, 1991.
*1092 Edmond R. Eberle, New Orleans, for plaintiffs/appellants.
Madeleine Fischer, New Orleans, for defendants/appellees.
Before GRISBAUM and GOTHARD, JJ., and KOLLIN, J. Pro Tem.
WALTER E. KOLLIN, Judge Pro Tem.
This appeal arises from litigation involving a vehicular collision. Plaintiffs, Mr. and Mrs. Larry Jones, filed suit against United Parcel Service, Inc., its insurer, Liberty Mutual Insurance Company, and the driver of a UPS vehicle, Joan Daniels, for injuries allegedly sustained in the accident. The jury returned a verdict in favor of defendants, finding that Daniels was not negligent. The verdict was made judgment of the court on November 27, 1989. Plaintiffs thereafter perfected a devolutive appeal, specifying the following as errors:
1. The trial court erred in allowing, over plaintiffs' objection, admission of hospital records showing results of drug testing without requiring defendants to lay a proper foundation by connecting the specimen with its source.
2. The trial court erred in refusing to give the jury several of plaintiffs' requested jury charges.
3. The verdict of the jury in finding the UPS driver not negligent and the judgment of the trial court thereon are contrary to the law and evidence.
We find the plaintiffs' specifications of error to be without merit and hence affirm the judgment of the trial court.
The accident in question occurred on June 11, 1986, at approximately 12:15 p.m. in the 100 block of Colonial Club Drive in Jefferson Parish. Colonial Club Drive is an undivided two-lane street running, with no intersecting streets, between River Road and Jefferson Highway. A golf course borders the west side of the street and residential homes border the east side. The speed limit is twenty miles per hour. The accident site is located approximately three hundred feet from the Jefferson Highway intersection and approximately half a mile from the River Road intersection.
While proceeding along Colonial Club Drive in the direction of Jefferson Highway, plaintiff Larry Jones, in his 1985 Chrysler, struck a parked UPS delivery truck. Earlier, Joan Daniels, the driver of the UPS truck, had parked her truck opposite to the flow of traffic, in front of the house where she was to make a package delivery. Ms. Daniels had activated the hazard lights on the truck and had applied the vehicle's parking brake prior to leaving the truck to make the package delivery. Thereafter Ms. Daniels returned to the truck; and as she was preparing to depart, she noticed plaintiff's vehicle approaching at an estimated speed of forty miles per hour. While still parked, the UPS truck was struck head-on by plaintiff's vehicle.
We now consider each of plaintiffs' specifications of error.

ADMISSIBILITY OF DRUG TESTS
In the first alleged error, plaintiffs argue that the trial court erred in allowing the admission of hospital records showing results of drug testing performed on Mr. Jones without requiring defendants to establish a chain of custody for the test specimen.
Plaintiff Larry Jones was taken to Ochsner Foundation Hospital immediately following the accident but within a few hours was transferred to West Jefferson General Hospital. There, a urine sample was obtained from Mr. Jones and sent to Ochsner *1093 Foundation Hospital for analysis. The analysis results were reported to West Jefferson and recorded as part of the West Jefferson General Hospital record admitted into evidence as Exhibit D-13 and Exhibit Jones-2. Blow-ups of the pertinent pages were introduced into evidence at trial as defense exhibits. The drug test results reflected the presence in Mr. Jones' system of cocaine, as well as various other medications prescribed for Mr. Jones.
Plaintiffs contend that the defendants did not offer evidence to establish the chain of custody for the urine sample after it was obtained from Mr. Jones. The defendants, according to the plaintiffs, failed to lay a proper foundation for the admissibility of the results of the drug test.
We find that the test results were properly admitted pursuant to L.S.A.-R.S. 13:3714, which provides as follows:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
In Brown v. Collins, 223 So.2d 453 (La. App. 3rd Cir.1969), the trial court permitted the defendants to file into evidence certified copies of the records of two hospitals showing the percentage of alcohol found in plaintiff's blood shortly after the accident involved in that case. The Third Circuit affirmed the admission of the medical records pursuant to the hospital exception of LSA-R.S. 13:3714. In response to plaintiff's argument that the proper foundation was not presented for the introduction of the hospital records, a panel of the Third Circuit stated:
Such foundation witnesses were not required. The statute quoted above clearly states that a certified copy of the record of any hospital "shall be received in evidence by such court as prima facie proof of its contents". No foundation is required for the admission of these certified records. See 26 T.L.R. 371 at 375. The very purpose of the statute is to eliminate the requirement, under prior rules of evidence, that everyone who wrote any part of the record or had anything to do with the specimens, laboratory tests, treatments, etc. shown in the records, must be produced as a witness in court to verify the record. These witnesses no longer need be produced. The rights of the party against whom the record is sought to be used are protected by the provisions of the statute that he may summon and examine those making the record as witnesses under cross-examination. We find no merit in the objection that the proper foundation for the introduction of the hospital records was not laid.
See also Aites v. State Through Dept. of Transp., 512 So.2d 865 (La.App. 3rd Cir. 1987) and 512 So.2d 866 (La.App. 3rd Cir. 1987), writ denied, 514 So.2d 133 (La.1987).
Based on the foregoing authorities, we find that the test results were properly admitted as part of the West Jefferson General Hospital records and accordingly find this alleged error to be without merit.

JURY INSTRUCTIONS
Plaintiffs also complain that the trial judge erred in refusing to give several of their requested jury instructions. More specifically, plaintiffs contend the following as errors:
1. The trial court erred in failing to instruct the jury that the UPS truck was illegally parked.
2. The trial court erred in failing to instruct the jury that, if it found that the UPS driver parked in a lane of traffic when she could readily have left the road and not obstructed the roadway, creating a hazard for other motorists, then it must find her negligent.
3. The trial court erred in failing to instruct the jury that the intentional or criminally negligent placing of anything on any road is a crime, wherein it is foreseeable that human life might be endangered *1094 or which will render movement more difficult.
4. The court erred in failing to instruct the jury that a violation of a traffic regulation is actionable in tort when it is the legal cause of a collision. The risk of a motorist colliding with an automobile parked on the travelled portion of the highway is within the scope of protection of the duty on UPS not to park there.
It is well established that adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. In making his charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.1983), writ denied, 434 So.2d 1097 (La.1983); Arnouville v. Joiner Enterprises, Inc., 423 So.2d 1246 (La.App. 5th Cir.1982), writ denied, 430 So.2d 76 (La.1983).
The adequacy of the jury instructions given by a trial court must be determined in the light of jury instructions as a whole. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Simmons v. Hope Contractors, Inc., 517 So.2d 333 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988); Mitchell v. Fire and Cas. Ins. Co., 540 So.2d 352 (La.App. 1st Cir.1989), writ denied, 541 So.2d 1390 (La.1989).
The pertinent question involved in deciding whether reversible error has occurred is whether the jury was misled to such an extent as to prevent it from doing justice. Cuccia v. Cabrejo, supra. In the instant case, the jury was given ample instructions to decide that the defendants were not negligent and were not a cause-in-fact of Jones' accident and subsequent injuries. Moreover, the charges refused by the trial judge were either not applicable to the facts of the case, not supported by the evidence or were included within the general charge given to the jury. Considering the instructions as a whole and the circumstances of the case, we cannot say that the trial judge erred in refusing to give the requested charges.
Accordingly, this designation of error is without merit.

SUFFICIENCY OF THE EVIDENCE
In the final specification of error, plaintiffs argue that the evidence adduced at trial fails to support the jury's factual finding that the UPS driver was not negligent.
The Louisiana Supreme Court has recently discussed the standard of review which is to be applied to factual findings. In Rosell v. Esco, 549 So.2d 840, 844 (La. 1989), the Louisiana Supreme Court, in part, stated:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978); A. Tate, "Manifest Error" Further observations on appellate review of facts in Louisiana civil cases, 22 La.L. *1095 Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La. 1985).
The factual testimony at trial was provided by the two drivers, Jones and Daniels, and by the investigating officer, Sergeant Hugenel.
Jones testified that on Wednesday, June 11, 1986, he was travelling down River Road going towards Harahan. When he reached Colonial Club Drive in Jefferson Parish, he took a right turn and as he was proceeding down Colonial Club Drive, he observed a UPS truck, facing forward and parked in his lane of traffic. While driving approximately twenty to twenty-five miles per hour, Jones proceeded to get into the left hand lane in an effort to pass the truck. While attempting to make this maneuver, he observed a car coming from Jefferson Highway faster than he thought. To avoid crashing into the vehicle, Jones swerved back into the right hand lane and collided with the parked UPS truck which according to plaintiff did not have its emergency lights on. Plaintiff did not attempt to put his brakes on because he felt it was too late. Jones was thereafter taken to Ochsner Foundation Hospital for treatment.
Jones admitted that his back problems began in 1973 and that at the time of this accident he had undergone several back surgeries. He also admitted that he regularly took prescribed medications; however, he denied taking them on the day of his accident. Jones testified that the medication did not affect his driving ability in any way. He conceded, however, that the generic version of elavil which was in his system at the time of the accident caused his speech to be slurred. When confronted with the results of the drug test, plaintiff testified that he snorted some cocaine on Sunday and had taken his regular medications on Monday. Further, Jones admitted that he had previously been addicted to some of the medications.
Daniels' version of the incident is somewhat different than that of Jones. Daniels testified that she turned from Jefferson Highway onto Colonial Club Drive, headed in the direction of River Road. She was driving along the appropriate lane of travel but then changed lanes to park in front of the house for which she had a delivery. Daniels parked her truck partially in front of the driveway at 179 Colonial Club Drive, left the vehicle's hazard lights blinking, and made her delivery. As she was re-entering her truck, she looked up and saw plaintiff's car approaching at an estimated speed of forty miles per hour. Even though plaintiff was about eight "big trucks' length away", he did not attempt to change his course of travel to avoid the accident. Plaintiff never veered to the left nor did he apply his brakes.
According to Daniels, after she initially stopped her truck, plaintiff's vehicle was the first to pass in either direction. Although she saw vehicles behind plaintiff, she did not see any other vehicles coming from Jefferson Highway as she was making her delivery. After impact, Jones exited his vehicle, approached Daniels and began cursing her. He then went back to his car, took something out of the front seat and put it in the trunk. Daniels testified that he "looked liked he was slurred, you could tell the man was not in his right mind." Jones then crossed the road and fell. She testified that after the accident, the vehicles that were travelling behind plaintiff's car went around the truck. She did not observe any vehicles pass in the opposite direction.
Daniels admitted that she was parked in a lane opposite to the direction of travel. *1096 Daniels testified that she parked in front of the delivery site because she felt it was the safest and most reasonable place to park under the circumstances. She did not park on the golf course side of the street because of its closeness to Jefferson Highway and also because she had been asked by the country club personnel not to park there due to the weight of the truck. Daniels chose not to park in the customer's driveway because of the type of delivery (non-signature required) and also because the truck might cause damage to the driveway.
Sergeant Hugenel, the investigating officer, testified that he spoke to both drivers during the course of the investigation. He characterized plaintiff as "rather incoherent". Plaintiff explained to the officer that he was on medication for a bad back, that he had taken the medicine that morning before leaving his residence, and that he was feeling dizzy and light-headed. The officer observed that plaintiff's speech was slurred and observed some medicine bottles lying on plaintiff's seat and in the trunk, some of which were apparently opened. Officer Hugenel also spoke to Daniels whose demeanor appeared to be calm to the officer.
From Officer Hugenel's appreciation of the scene, there was adequate clearance on Colonial Club Drive for a car to go around the parked UPS vehicle. Sergeant Hugenel further testified that the amount of vehicular damage indicated that plaintiff was speeding; however, he could not prove it, and therefore did not issue a ticket. Officer Hugenel also testified that parking is permitted on both sides of Colonial Club Drive since no signs to indicate otherwise are present.
The trier of fact had ample testimony upon which to base the conclusion that defendants were not negligent and were not a cause-in-fact of Jones' accident. We cannot say that the trier of fact was clearly wrong or manifestly erroneous in making this factual finding, and consequently, in dismissing plaintiffs' suit. Accordingly, plaintiffs' final contention is without merit.

FRIVOLOUS APPEAL
Defendants/appellees have asked this Court to award them damages for a frivolous appeal. Defendants, however, have not appealed nor filed an answer to plaintiffs' appeal. In order to demand damages for a frivolous appeal, an appellee must either raise the issue in an independent appeal or in an answer to the appellant's appeal. LSA-C.C.P. art. 2133; Cheramie v. Vegas, 413 So.2d 1343 (La.App. 1st Cir.1982), appeal after remand, 468 So.2d 810 (La.App. 1st Cir.1985), writ denied, 470 So.2d 122 (La.1985); Olivier v. Comeaux, 498 So.2d 1135 (La.App. 3rd Cir.1986).
Accordingly, for the reasons set forth above, we affirm the decision of the trial court.
AFFIRMED.
Before GOTHARD, J., and KOLLIN, J. Pro Tem.

ON REHEARING
PER CURIAM.
This application for rehearing is granted solely for the purpose of reconsidering the issue of frivolous appeal raised by defendants/appellees. On December 16, 1989, defendants/appellees did, in fact, file an answer to plaintiffs' appeal, thereby reserving their right to seek damages for frivolous appeal. At the time of our original opinion, the answer to the appeal was not contained in the record, and thus this Court was precluded from considering the claim. LSA-C.C.P. art. 2133.
Damages for frivolous appeal are awarded under LSA-C.C.P. art. 2164 only when it clearly appears that the appeal was taken solely for the purpose of delay or that counsel for appellant does not seriously believe in his legal position. Fouchi v. Fouchi, 442 So.2d 506 (La.App. 5th Cir. 1983), writ denied, 445 So.2d 1235 (La. 1984); Volz v. Hertz Rent-A-Car, 552 So.2d 1311 (La.App. 5th Cir.1989).
We are not convinced that this appeal falls into either of these categories and *1097 therefore we reject defendants/appellees' demand for damages for frivolous appeal.